**In re Angela WOODS, Debtor.**

**Bankruptcy No. 02 B 25974.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 10, 2004.

Joseph Wrobel, Jeana Kim Reinbold, Joseph Wrobel, Ltd., Chicago, IL, Attorneys for Debtor.

Jay W. Tribou, Office of the Chapter 13 Trustee, Marilyn O. Marshall, Chicago, IL, Attorney for Trustee.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Chief Judge.

This Chapter 13 case is before the court on the debtor's motion to compel the trustee to pay a postpetition tax claim. The trustee has refused to pay the claim, principally on the ground that it was not timely filed. However, as discussed below, there is no deadline for filing postpetition claims in Chapter 13, and because other objections posed by trustee also fail, the debtor's motion will be granted.

### Jurisdiction

Under 28 U.S.C. § 1334(a), the district courts have exclusive jurisdiction over bankruptcy cases. Pursuant to 28 U.S.C. § 157(a) and its own Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has referred its bankruptcy cases to the bankruptcy court of this district. When presiding over a referred case, the bankruptcy court has

jurisdiction under 28 U.S.C. § 157(b)(1) to enter appropriate orders and judgments in core proceedings within the case. The pending motion is a core proceeding under 28 U.S.C. § 57(b)(2)(B) (allowance or disallowance of claims), and this court may therefore enter a final order resolving the motion.

## Factual Background

The relevant facts are both simple and undisputed. Angela Woods filed this Chapter 13 bankruptcy case on July 8, 2002. Two and a half months later, on September 27, the court confirmed her Chapter 13 plan. Section E.6 of the plan provides for the trustee to pay from funds contributed by the debtor "[a]llowed priority claims other than those of the debtor's attorney ... in full, without interest." On March 24, 2004—about a year and a half after the case was filed—the IRS filed proof of a priority claim for $1,568 in 2002 income taxes, pursuant to § 1305 of the Bankruptcy Code (Title 11, U.S.C.). Although the trustee did not object to this claim, she took the position that proof of the claim was untimely filed, and she refused to pay it. In response, the debtor filed the pending motion for an order directing payment of the claim. The parties briefed the matter and after an initial oral ruling by the court, the trustee agreed to begin paying the claim pending a final, written decision on the matter.

## Discussion

Section 1305 of the Bankruptcy Code is an anomaly. The usual claims-processing rule, applicable in Chapter 7, 11 and 12 cases, has two basic features. First, a proof of claim (allowing payment through the bankruptcy case) can only be filed for claims that arose before the bankruptcy petition was filed.[1] Second, claims as to which a proof can be filed are discharged whether or not a proof actually is filed.[2] Under § 1305, however, both of these features of claims processing are reversed. Section 1305 provides that holders of either postpetition tax claims or postpetition consumer debts necessary for a debtor's performance under the plan may file proofs of claim.[3] And the courts have

---

1. The mechanism that produces this result is indirect but relatively clear: "claim" is broadly defined in § 101(5) of the Code as any "right to payment" without regard to when the right arose, but § 501(a) provides for filing proofs only of the claims of a "creditor." "Creditor" is defined in § 101(10)(A) as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor"—and the "order for relief" in a voluntary bankruptcy case, pursuant to § 301, is the filing of the petition initiating the case. Section 101(10)(B) and (C) adds to the definition of "creditor" entities that have particular postpetition claims, but, in general, only entities with prepetition claims are "creditors" whose claims can be filed under § 501. Since filing a proof of claim is generally required for the claim to be allowed under § 502, only prepetition claims can generally be allowed. *See* Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 502.03[1][b] at 502–21 (15th ed.2004).

2. *See, e.g.,* 11 U.S.C. § 707(b), which generally defines the Chapter 7 discharge as applying to "debts that arose before the date of the order for relief under this chapter ... whether or not a proof of claim based on any such debt ... is filed under section 501."

3. Section 1305 provides:

(a) A proof of claim may be filed by any entity that holds a claim against the debtor—
(1) for taxes that become payable to a governmental unit while the case is pending; or
(2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.
(b) Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but

uniformly interpreted § 1305 to give these postpetition creditors the option of having their claims pass though the bankruptcy without discharge simply by not filing the proof of claim that the section authorizes. *See,* e.g., *In re Sims,* 288 B.R. 264, 267–69 (Bankr.M.D.Ala.2003); 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 350.1 at 350–54 n. 18 (3d ed.2004) (collecting authorities).

## A. Preliminary matters.

The debtor's motion ultimately challenges the trustee's view that a postpetition claim under § 1305 must be disallowed if a proof of the claim is not filed within the deadlines applicable to prepetition claims. This presents an issue of statutory construction addressed below. However, it is first necessary to address four preliminary matters.

■ 1. *The need for an adversary proceeding.* The debtor's motion seeks a court order directing the trustee to pay the IRS's § 1305 claim. Contending that the motion seeks injunctive relief, the trustee has argued that it is improper under Fed. R. Bankr.P. 7001(7), which requires that requests for injunctive relief be brought by way of an adversary proceeding, with service of summons and a complaint. However, Rule 7001(7) deals with the initiation of a proceeding to obtain an enforceable injunctive order, not with the enforcement of an order already obtained. Once a party has been properly brought before the court in connection with a particular matter, a separate adversary proceeding is not required for collateral issues. *Cf. In re Continental Airlines, Inc.,* 236 B.R. 318, 327 (Bankr.D.Del.1999), *aff'd,* 2000 WL 1425751 (D.Del. Sept.12, 2000), *aff'd,* 279 F.3d 226 (3rd Cir.), *cert. denied,* 537 U.S. 944, 123 S.Ct. 345, 154 L.Ed.2d 252 (2002) (adversary proceeding not required to enforce provisions of a Chapter 11 confirmation order, since "an adversary proceeding is not necessary where the relief sought is the enforcement of an injunction previously obtained").

■ The debtor's motion here does not initiate a new proceeding but seeks to enforce the plan that this court previously confirmed. Although a Chapter 13 trustee has other responsibilities under § 1302(b), the most fundamental duty is properly maintaining and disbursing funds paid by Chapter 13 debtors.[4] As to payments, § 1326(a)(2) sets out the trustee's duties in three steps:

· the payments of earnings or income "shall be retained by the trustee until confirmation or denial of confirmation of a plan;"

· if the plan is not confirmed, "the trustee shall return any such payment to the debtor, after deducting any unpaid [allowed administrative] claim;" and

· if the plan is confirmed, "the trustee shall distribute any such payment in ac-

---

shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.

(c) A claim filed under subsection (a)(2) of this section shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained.

**4.** Unlike Chapter 7 or 11 trustees, a Chapter 13 trustee does not take possession of debtors' nonexempt property. Under § 1306(b) of the Code, debtors remain in possession of their property throughout a Chapter 13 case. What the trustee administers instead is the "future earnings or other income of the debtor ... necessary for the execution of the plan" that a debtor must submit to "the supervision and control of the trustee." 11 U.S.C. § 1322(a)(1).

cordance with the plan as soon as practicable."

Thus, upon confirmation of a Chapter 13 plan, the trustee has a nondiscretionary duty to make distributions on claims as the plan directs. *Ford Motor Credit Co. v. Stevens (In re Stevens)*, 130 F.3d 1027, 1031 (11th Cir.1997) ("A Chapter 13 trustee is obliged by statute to make payments to all creditors under the terms of the confirmed plan.").

As a result, the confirmation hearing is the proceeding in which a trustee must litigate the appropriateness of a plan's payment terms. *See* 11 U.S.C. § 1302(b)(2) (requiring the trustee to "appear and be heard at any hearing that concerns ... confirmation of a plan"). The trustee, of course, was entitled to notice of the hearing on confirmation of the debtor's plan, *see* Fed. R. Bankr.P. 2002(b). But notice of a confirmation hearing does not require an adversary complaint with summons, even if the plan contains an express injunction. Rule 7001(7), which imposes the requirement of adversary proceedings for injunctive relief, is subject to an exception for such relief provided for in a Chapter 13 plan.[5] The trustee has not challenged the notice of the confirmation hearing that she received. Once the plan was confirmed at that hearing, the debtor was not required to file an adversary proceeding under Rule 7001(7) to enforce the payment obligations that the plan imposed.

**■** 2. *The treatment of postpetition claims under the debtor's plan.* The plan provision that the debtor seeks to enforce (§ E.6) requires the trustee to pay "allowed priority claims." It does not explicitly direct payment of "postpetition" claims. The trustee seizes on the absence of this specification to contend that postpetition claims are not covered by the plan.

Although the trustee presents no developed argument in connection with this contention, there is some support for it. Section 1322(b)(6) of the Bankruptcy Code states that a plan may "provide for payment of all or any part of any claim allowed under section 1305." This provision has led some courts and commentators to conclude that unless a plan contains explicit language stating that postpetition claims are payable, the plan should be read not to provide for their payment. *See, e.g., In re Holmes*, 312 B.R. 876, 878 (Bankr. W.D.Tenn.2004); 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 350.1 at 350-2 (3d ed. 2004) ("A plan that does not ... make any mention of the payment of postpetition claims does not provide for such claims....")

**■** However, § 1322(b)(6) is permissive, not mandatory. It allows a plan to give special treatment to postpetition claims (payment of "all or any part" of the claim) distinct from the treatment of prepetition claims, but it does not require special treatment of postpetition claims for those claims to be paid.[6] By providing

5. Rule 7001(7) includes as an adversary proceeding "a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief."

6. Section 1322(b)(6) is an exception to the usual rule—set out in § 1322(b)(1)—that different classes of unsecured claims may not be treated in an unfairly discriminatory fashion. Section 1322(b)(6) overrides this provision in

connection with postpetition claims for good reason. Given the courts' interpretation allowing postpetition creditors the option of not filing a § 1305 claim and retaining the right to collect the full claim outside of bankruptcy, a postpetition creditor is unlikely to file a § 1305 claim unless full payment is provided through the plan. *See Holmes*, 312 B.R. at 878, n. 1 ("The structure of the Code ... leads typically to a postpetition creditor not filing a claim unless the Debtor agrees to treat

generally for payment of allowed priority claims, the debtor's plan encompasses all allowed priority claims, whether they involve taxes or other obligations, and whether they arose prepetition under § 501 or postpetition under § 1305.[7]

■■ 3. *The absence of an objection.* A central feature of the claims allowance process is that once a proof of claim is filed, the claim is treated as allowed unless an objection is filed. This rule is stated quite clearly in § 502(a): "A claim ... proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." Thus, without an objection, a Chapter 13 trustee cannot treat a filed claim as disallowed. *In re Jones,* 271 B.R. 397, 401 (Bankr.S.D.Ala. 2000) ("[T]he trustee cannot unilaterally override a proof of claim."). Section 1305 creates no different rule for postpetition claims. To the contrary, § 1305(b) expressly provides that claims within the scope of the section "shall be allowed or disallowed under section 502 of this title"—thus requiring postpetition claims, in the absence of objection, to be treated as allowed.

■ The trustee therefore acted improperly in treating the IRS claim as disallowed for untimeliness in the absence of a claim objection on that ground. However, in response to the debtor's motion, the trustee set out her reasons for believing that the IRS claim should be disallowed,

the trustee provided notice to the IRS, and the parties have treated this response as a claim objection, fully briefing the issue of timeliness. Under these circumstances, the debtor (and the IRS) waived the requirement that the trustee file a formal claim objection, and the merits of the parties' dispute can properly be adjudicated. *Cf. In re Pence,* 905 F.2d 1107, 1109 (7th Cir.1990) (holding that the requirement of an adversary complaint is not a jurisdictional defect and could be waived by the opposing party).

4. *The debtor's "adoption" of the IRS claim.* As an alternative to her contention that the IRS claim was not untimely, the debtor's motion requests in the alternative (1) that she be given leave to "adopt" the IRS claim and (2) that her time for filing proof of this claim under Fed. R. Bankr.P. 3004 be extended retroactively. This proposal attempts to avoid the question of whether the IRS timely filed its proof of claim by exploiting a disparity in the bankruptcy rules. Fed. R. Bankr.P. 9006(b)(3), as discussed below (at n. 10), strictly limits the extent to which a court may extend the deadlines set forth in Fed. R. Bankr.P. 3002(c) for creditors to file proofs of their own claims, but it places no limit on the extent to which a court may extend the deadline set forth in Fed. R. Bankr.P. 3004 for debtors to file proofs of claims on behalf of creditors. The deadline for the debtor to file is instead subject only to the

that claim at 100% payment."). Since the plan in this case provides that all priority claims are payable at 100%, a special provision of the sort authorized by § 1322(b)(6) was unnecessary to persuade the IRS to file its claim under § 1305.

**7.** An unpublished decision of the Sixth Circuit, *Hobbs v. Methodist Hosp. of Memphis, Inc. (In re Hobbs),* No. 98–6050, 1999 WL 1252861 (6th Cir. Dec.15, 1999), illustrates this principle, applying a plan's 10% payment terms for non-priority claims to a postpetition

medical claim filed under § 1305. In discussing *Hobbs,* the Lundin treatise recognizes that general payment terms may indeed apply to § 1305 claims, suggesting that "[i]f the plan is silent with regard to postpetition claims, a postpetition lender ... might negotiate with the debtor for modification of the plan to pay the postpetition debt in full," rather than accept partial payment under the plan's general terms. 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 350.1 at 350–3.

general provisions of Rule 9006(b)(1), which allow retroactive extension of deadlines "where the failure to act was the result of excusable neglect."

 This approach, however, is unavailing, since the debtor cannot "adopt" the IRS claim. Section 501(c) allows a debtor to file proof of a "creditor's" claim if the creditor does not timely do so, but as discussed above (at n. 1), only holders of prepetition claims are generally defined as "creditors" under the Code, and so § 501(c) does not apply to postpetition claims. Section 1305, in turn, contains no provision parallel to § 501(c). To the contrary, under the express provisions of § 1305(a), only the entity holding a postpetition claim against the debtor is authorized to file the proof of claim. *In re Epstein*, 200 B.R. 611, 614 (Bankr. S.D.Ohio 1996) (collecting authorities holding that a debtor may not file proof of a § 1305 claim for a creditor). And, of course, the right to file a § 1305 claim must be limited to the postpetition creditor holding the claim if the creditor is to be accorded the option of allowing the claim to pass through bankruptcy unaffected by the debtor's plan. Thus, if § 1305 claims are subject to filing deadlines, a debtor cannot avoid those deadlines by filing a proof of claim on a creditor's behalf.

## B. The timeliness of the IRS claim.

 Since the preliminary matters do not dispose of the debtor's motion, it is necessary to consider the trustee's argument that the IRS claim should be disallowed as untimely. This argument is based on a literal application of § 502(b)(9) to the claim. Section 502(b)(9) provides that a claim shall be disallowed if "proof of such claim is not timely filed" and goes on to give governmental units 180 days after the filing of a voluntary bankruptcy case to file a proof of claim, unless the Federal Rules of Bankruptcy Procedure provide a longer period.[8] The relevant rule—Fed. R. Bankr.P. 3002(c)(1)—adds little to this provision. It states simply:

> A proof of claim of a governmental unit is timely filed if it is filed not later than 180 days after the date of the order for relief. On motion of a governmental unit before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the governmental unit.

Applying these time limits to the IRS claim would, as the trustee contends, render the claim untimely filed. This case was filed (generating the order for relief) on July 8, 2002; the 180th day thereafter was January 4, 2003. The IRS did not ask for an extension of the deadline before this date, and its proof of claim was filed much later, on March 24, 2004.

A literal application of § 502(b)(9) to claims under § 1305 would ordinarily be required. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"). In the pres-

---

**8.** Section 502(b) states:

[I]f ... objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(9) proof of such claim is not timely filed, ... except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide.

ent situation, however, "plain meaning" does produce genuinely anomalous results. As to prepetition claims, the filing deadlines of § 509(b) and the bankruptcy rules, though stringent, are a reasonable balance between the need for prompt administration of a bankruptcy case and a fair opportunity for the claimant to file. Applied to postpetition claims, however, these deadlines are patently unreasonable, as the present case illustrates. Even with perfect efficiency and access to all relevant information, the IRS could not determine whether the debtor was liable for 2002 income taxes until the tax year closed and the debtor's withholding could be compared to her taxable income. The tax year closed on December 31, 2002, only four days before the 180–day deadline expired. Moreover, the IRS could not realistically assess the debtor's tax liability until the time for filing her return had passed, and that date (April 15, 2003) was three months after the expiration of the 180–day deadline.[9]

The problem created by applying the claims-filing deadlines to § 1305 is not limited to tax claims. For non-governmental claims, an even shorter deadline applies. Fed. R. Bankr.P. 3002(c) requires these claims to be filed within 90 days after the first date set for the meeting of creditors under § 341 of the Code. Since Fed. R. Bankr.P.2003(a) requires that meeting to be set between 20 and 50 days after the case filing, the non-governmental filing deadline is between 110 and 140 days after case filing. And this deadline—unlike the one for governmental claims—cannot be extended.[10]

■■■ Under circumstances like these, the plain meaning rule is not inexorable. "Courts are not required to follow literal language where it would produce an outcome at odds with the purpose of Congress and where the result stems merely from an unintended quirk in drafting." *Nelson v. Scala,* 192 F.3d 32, 35 (1st Cir.1999) (rejecting literal application of § 522(f)(2) of the Bankruptcy Code); *accord Lehman*

---

**9.** Recognizing the realities of tax collection, most courts hold that an income tax claim is not payable until the time for filing the debtor's tax return. *See United States v. Ripley (In re Ripley),* 926 F.2d 440, 444 (5th Cir.1991) (holding that self-employment taxes become payable when the annual return is due, despite the requirement of earlier estimated payments); *United States v. Chavis (In re Chavis),* 47 F.3d 818, 819 n. 4 (6th Cir.1995) (stating that income tax liability is a postpetition debt because it is not due until the year following receipt of the income); *In re Ryan,* 78 B.R. 175, 183 (Bankr.E.D.Tenn.1987) (same); *In re Rothman,* 76 B.R. 38, 40 (Bankr.E.D.N.Y.1987) (same); *In re Starkey,* 49 B.R. 984, 987 (Bankr.D.Colo.1984) (noting that the IRS Code "specifically provides that taxes are due and payable . . . at the time that the tax returns are due"); *but see Dixon v. Internal Revenue Service (In re Dixon),* 218 B.R. 150 (10th Cir. BAP 1998); *In re Wilkoff,* 2001 WL 91624, at *7 (Bankr.E.D.Pa. Jan.24, 2001); *In re Bryant,* 1998 WL 412632, at *4 n. 6 (Bankr.E.D.Va., Apr.24, 1998) (holding that

taxes become payable on the last day of the year the taxes accrue).

**10.** Unlike its treatment of governmental claims, Rule 3002 provides no "for cause" or "excusable neglect" extension of its deadline for non-governmental claims, and Rule 9006(b)(3) allows extensions of Rule 3002(c)'s deadlines "only to the extent and under the conditions" there stated. *See Gardenhire v. United States (In re Gardenhire),* 209 F.3d 1145, 1148 (9th Cir.2000) (holding that a bankruptcy court has no discretion to allow extension of the "rigid deadline" imposed by Rule 3002(c) except to the extent that the rule itself provides). *Gardenhire* refused to allow a retroactive extension of the 180–day deadline for filing of claims by governmental units, since the rule requires such motions to be made prior to the expiration of the deadline. Because the rule does not provide for any extension of time for filing general non-governmental claims, the filing deadline for these claims is "an absolute bar." *In re Greenig,* 152 F.3d 631, 634 (7th Cir.1998).

*v. VisionSpan, Inc. (In re Lehman)*, 205 F.3d 1255, 1257 (11th Cir.2000). This exception is applicable here. Applying the filing deadlines to claims under § 1305 actually produces two different results that could not have been intended. The first is automatic disallowance of most of the claims that § 1305 authorizes. Chapter 13 plans generally provide for payments from the debtor for a period lasting between three and five years, *see* 11 U.S.C. § 1322(d), and § 1305 allows postpetition claims to be filed any time during this period.[11] But no more than six months into the course of any Chapter 13 case, the filing deadlines would render any claim filed under § 1305 subject to disallowance.

The second absurd result is discharge following disallowance. The discharge provided for by § 1328(a) of the Code upon completion of plan payments applies not only to claims that are paid through the plan, but also for "all debts ... disallowed under section 502." This provision is subject to an exception for certain debts, but necessary consumer debts and tax claims are not among them. As noted above, a claim under § 1305 simply passes through bankruptcy without being discharged if proof of the claim is not filed. But if the filing deadlines apply to these claims, a late-filing post-petition creditor would not only be denied a right to payment under the plan upon disallowance of the claim, but would be denied payment altogether because of the resulting discharge, even though the claim would have been fully payable outside of bankruptcy if the proof had not been filed.

Congress never intended these outcomes. On its face, § 1305 assists a debtor in obtaining postpetition credit "necessary for the debtor's performance under the plan." So, for example, if repairs are needed to an automobile that the debtor requires for employment, § 1305 allows the debtor to borrow the cost of the repairs and provide the repair shop with a claim that can be paid during the course of the Chapter 13 plan. The legislative history reflects precisely this intent. See H.R.Rep. No. 95–595, at 427–28 (1977), reprinted in 1994 U.S.C.C.A.N. 5963, 6383. But applying the claim filing deadlines to § 1305 would make it impossible for the debtor to obtain such credit if the need arose more than 140 days after the case filing. Similarly, the choice that the courts have accorded to postpetition tax claimants under § 1305—to accept payment as proposed by a Chapter 13 plan—is a continuation of an established policy under § 680 of the Bankruptcy Act of 1898 ("[T]he United States or any State may ... accept the provisions of any plan dealing with the assumption, settlement, or payment of any [postpetition] tax"). 11 U.S.C. § 1080 (1978) (repealed); *see Hester v. Powell (In re Hester)*, 63 B.R. 607, 609–10 (Bankr. E.D.Tenn.1986) (discussing the treatment of postpetition taxes under the Act and the Code). This policy, too, would be vitiated by disallowing all tax claims that were not filed within 180 days of the case filing.

Indeed, it is fairly plain that § 502(b)(9) was intended to apply only to prepetition claims. Section 502(b)(9) was not part of the Bankruptcy Code as originally drafted. As discussed in *In re Hausladen*, 146 B.R. 557, 559 (Bankr.D.Minn.1992), the Code did not originally provide for disallowance of any claims due to late filing. Accordingly, *Hausladen* held that ordinary prepetition claims, though late-filed, would have to be treated as allowed in Chapter 13. In 1994, Congress responded to *Hausladen's*

---

**11.** Under § 1305(a), a claim for taxes can be filed if the taxes "become payable ... while the case is pending," and necessary consumer claims can be filed as long as they arise "after the date of the order for relief."

allowance of late-filed prepetition claims by adding § 502(b)(9) to the Code. H.R.Rep. No. 103–835, at 48 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3357. But neither *Hausladen* in 1992 nor Congress in 1994 directed any attention to postpetition claims under § 1305.

Applying the filing deadlines of § 502(b)(9) and Bankruptcy Rule 3002 to claims under § 1305 would thus produce results "demonstrably at odds with the intentions" underlying § 1305. To effectuate these intentions, postpetition claims under § 1305 must be able to be filed and allowed at any time during a Chapter 13 case.[12] Accordingly, the trustee's objection to the IRS claim implicit in her response to the debtor's motion is unfounded, and the debtor is entitled to an order requiring the trustee to pay the claim in full, as provided in the debtor's plan.

### Conclusion

For the reasons stated above, the debtor's motion is granted. By separate order, the trustee will be directed to pay the IRS the sum of $1,568, pursuant to the terms of the debtor's confirmed plan.

---

**12.** Not surprisingly, no published decision appears to have applied the filing deadlines of § 502(b)(9) to § 1305. On the other hand, at least one court of appeals has issued a decision based on the premise that the filing deadlines do not apply to § 1305 claims. In *Ripley,* 926 F.2d 440, the IRS filed proof of a tax claim after the 180–day deadline, and the court recognized that if the claim arose prepetition, it would have to be disallowed as untimely under Fed. R. Bankr.P. 3002. However, without discussing the question, the court held that if the taxes had become payable postpetition, "the IRS' proof of claim was properly filed under section 1305." *Id.* at 443.