**In re William M. JONES, and Janet A. Jones, a/k/a Janet L. Allen, Debtors.**

No. 8:04–bk–11770–PMG.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 4, 2007.

Charles H. Dittmar, Jr., Tampa, FL, for Debtors.

Patrick J. Hannon, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC, for Internal Revenue Service.

## ORDER ON DEBTORS' OBJECTION TO PROOF OF CLAIM OF INTERNAL REVENUE SERVICE (Claim No. 2)

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Debtors' Objection to Proof of Claim of Internal Revenue Service (Claim No. 2).

The Internal Revenue Service (IRS) filed Claim Number 2 in the total amount of $22,569.68. The Claim is based on the Debtors' income tax liability for the 2002 tax year.

In their Objection, the Debtors, William M. Jones and Janet A. Jones, request that the Court amend the Proof of Claim to add their income tax liability for the 2004 tax year, without interest or penalties. According to the Debtors, the doctrine of judicial estoppel applies in this case to warrant the amendment.

In response to the Objection, the IRS asserts that the Debtors' income tax obligation for 2004 is a postpetition liability. According to the IRS, therefore, it cannot be forced to include the 2004 tax liability in its Claim, because § 1305 of the Bankruptcy Code grants tax creditors the exclusive

right to choose whether or not to file a Proof of Claim for such postpetition liabilities.

## Background

The Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 9, 2004.

On September 7, 2004, the United States Trustee (UST) filed a Motion to Dismiss Pursuant to 11 U.S.C. § 707(b), or Alternatively, 11 U.S.C. § 707(a). (Doc. 5).

On October 14, 2005, the Court entered an Order granting the UST's Motion. (Doc. 38). In the Order, the Court found that the Chapter 7 case should be dismissed based on the totality of the circumstances, and specifically found that the Debtors had the ability to pay a substantial portion of their debt in the context of a Chapter 13 Plan. The Court delayed the effective date of the dismissal, however, to allow the Debtors to convert their case to a case under Chapter 13 of the Bankruptcy Code. (Doc. 38).

On October 21, 2005, the Debtors filed a Motion to convert the case, and the case was converted to a case under Chapter 13 on November 3, 2005. (Docs. 40, 43, 44).

On November 8, 2005, the Debtors filed a Chapter 13 Plan. (Doc. 47). The Plan provided for the payment of a priority claim of the IRS in the estimated amount of $30,000.00, and the payment of a secured claim of the IRS in the amount of $13,653.00.

The Chapter 13 Plan was confirmed on May 15, 2006. (Docs. 61, 62). The Order Confirming Plan authorized and directed the IRS "to set off against any pre-petition tax obligation of the Debtors, the tax refund being held by said Creditor in the amount of $13,653.00."

On September 11, 2006, the Court entered an Order Allowing and Disallowing Claims and Ordering Disbursements. (Doc. 74). Pursuant to the Order, the IRS was to receive distribution in the amount of $5,160.06 as an unsecured claim, and distribution in the amount of $3,756.62 as a priority claim.

The payments set forth in the Disbursement Order (as well as the setoff authorized by the Order Confirming Plan) were to be made on account of the IRS's Claim Number 2. Claim Number 2 was filed in the total amount of $22,569.68, and was based solely on the Debtors' prepetition income tax liability for the 2002 tax year. Claim Number 2 does not include the Debtors' postpetition income tax liability for the 2004 tax year.

On October 4, 2006, the Debtors filed their Objection to the IRS's Claim Number 2. (Doc. 77). In the Objection, the Debtors assert that their income tax liability for 2004 is in the approximate amount of $35,000.00, without interest or penalties. The Debtors request that the Court require the IRS to amend its claim to include the 2004 tax obligation, without interest or penalties, so that the claim may be paid through their Chapter 13 Plan. They also assert that the IRS should be required to amend the Claim pursuant to the doctrine of judicial estoppel.

## Discussion

The first issue in this case is whether the Court can require the IRS to amend its Proof of Claim to include the postpetition tax obligation owed by the Debtors. This question involves the effect of § 1305(a) of the Bankruptcy Code on the IRS's Claim.

The second issue is whether the IRS is judicially estopped from excluding the postpetition debt from its Proof of Claim. The Debtors contend that the doctrine of judicial estoppel applies in this case because of the position taken by the UST in

connection with its prior Motion to Dismiss the Debtors' Chapter 7 case.

## I. Section 1305

■ The Court finds that the Debtors' postpetition income tax liability cannot be included in Claim Number 2 without the consent of the IRS.

Section 1305(a) of the Bankruptcy Code provides:

**11 USC § 1305. Filing and allowance of postpetition claims**

(a) A proof of claim *may* be filed *by any entity that holds a claim against the debtor—*

(1) *for taxes that become payable to a governmental unit while the case is pending;* or

(2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.

11 U.S.C. § 1305(a)(Emphasis supplied).

The term "may" is permissive and not mandatory, of course, and the provision allowing "any entity that holds a claim against a debtor" for a certain type of postpetition debt to file a proof of claim for such debt does not authorize the debtor to file a proof of claim for that debt. Accordingly, Courts that have considered § 1305(a) have consistently held that the section grants to postpetition claimants the choice of either filing a Proof of Claim and participating in the debtor's plan, or not filing a Proof of Claim and allowing their claim to pass the bankruptcy unaffected. Further, the choice lies solely with the claimant, and the debtor cannot force the claimant to file a claim and accept the treatment provided by the Chapter 13 plan.

In *In re Laymon,* 360 B.R. 902 (Bankr. E.D.Ark.2007), for example, a postpetition creditor filed a declaratory action seeking a determination that its claim could not be involuntarily included in the debtor's amended plan. Although the obligation in that case involved a postpetition consumer debt under subsection (2) of § 1305(a), the Court's ruling applies equally to postpetition tax liabilities under subsection (1) of § 1305(a). In *Laymon,* the Court stated:

Therefore, only the holder of a § 1305 claim may file a proof of claim for a post-petition debt. *In re Benson,* 116 B.R. 606, 607 (Bankr.S.D.Ohio 1990). The debtor may not involuntarily "provide for" a debt that is not the subject of a properly filed and allowed post-petition proof of claim.

Bankruptcy courts have held that, by definition, a debtor is not a holder of claim. *In re Sims,* 288 B.R. 264, 268 (Bankr.M.D.Ala.2003); *Benson,* 116 B.R. at 607. Further, "a debtor may not file proof of a § 1305 claim on behalf of the holder of such a claim." *Benson,* 116 B.R. at 608(quoting *In re Pritchett,* 55 B.R. 557, 559 (Bankr.W.D.Va.1985)). *Section 1305(a)(2) of the code does not require that post-petition creditors file a claim, and the debtor cannot force the creditor's participation through postconfirmation modifications.*

*In re Laymon,* 360 B.R. at 904(Emphasis supplied). Since the claimant in *Laymon* had not filed a Proof of Claim under § 1305, the Court found that the claim could not be "provided for" in the debtor's plan. *Id.* at 904.

In reaching its decision, the Court in *Laymon* cited *In re Woods,* 316 B.R. 522, 524–25 (Bankr.N.D.Ill.2004) for the proposition that "courts have uniformly interpreted § 1305 to give these postpetition creditors the option of having their claims pass through the bankruptcy without discharge simply by not filing the proof of claim that the section authorizes." The

liability at issue in *Woods* was a postpetition tax claim under subsection (1) of § 1305(a).

For other decisions interpreting § 1305(a), see *In re Holmes,* 312 B.R. 876, 878 (Bankr.W.D.Tenn.2004)(The tax debt at issue was "a postpetition liability for which the IRS may, but is not required to, file a claim pursuant to § 1305(a)"); *In re Parffrey,* 264 B.R. 409, 413 (Bankr. S.D.Tex.2001)("There is no requirement that the holder file proof of a postpetition claim under section 1305."); and *In re Wilkoff,* 2001 WL 91624, at *7 (E.D.Pa. 2001)(The option to file proof of a postpetition claim "belongs exclusively to the holder of such a claim; the debtor may not force the holder to file proof of claim and may not file a proof of claim on the holder's behalf.")

Pursuant to § 1305(a) and the decisions discussed above, therefore, the Court finds that the IRS cannot be compelled to include any postpetition tax liability in its Proof of Claim. The Debtors' Objection to the IRS's Claim Number 2 should be overruled to the extent that they seek an Order including the postpetition tax liability in the Claim, without the consent of the IRS.

## II. Judicial estoppel

Despite the effect of § 1305(a), as described above, the Debtors contend that the IRS is judicially estopped from refusing to amend its Claim to add the 2004 tax liability. Essentially, the Debtors assert that the United States Trustee (UST) had taken a position earlier in this case in connection with its Motion to Dismiss that is inconsistent with the position currently taken by the IRS.

Specifically, the Debtors contend that the UST had included in its Motion to Dismiss their Chapter 7 case that a Chapter 13 Plan would be feasible if the Plan included the postpetition tax liability. The UST's Motion was granted, and the Debtors converted their Chapter 7 case to a case under Chapter 13.

The Debtors contend, therefore, that the IRS's current refusal to voluntarily include the postpetition tax liability in its Proof of Claim is inconsistent with the UST's prior argument regarding the feasibility of a Plan that dealt with the liability. (Transcript, p. 6). Since the UST and the IRS are both "functions of the U.S. government," according to the Debtors, the IRS should be judicially estopped from now excluding the postpetition liability from its Claim. (Transcript, p. 12).

■ Where the issue of judicial estoppel is raised in the context of a bankruptcy case, federal law generally governs the analysis. *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir.2002).

■ Judicial estoppel is invoked ". . . to prevent parties from asserting inconsistent positions in legal proceedings and, thereby, undermining the integrity of the judicial system or gaining unfair advantage over the other parties." *Helson v. Nuvell Financial Services Corp.,* 2006 WL 1804583, at 2 (M.D.Fla.2006).

■ The principles of judicial estoppel were recently explained by the United States District Court for the Middle District of Florida as follows:

Under the theory of judicial estoppel, a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken *by the same party* in a previous proceeding. *See Barger v. City of Cartersville, Georgia,* 348 F.3d 1289, 1293 (11th Cir.2003)(citing *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir.2002)). *The applicability of judicial estoppel turns on two factors: (1) whether the allegedly incon-*

*sistent statements were made under oath in a prior proceeding; and (2) whether the inconsistencies were calculated to make a mockery of the judicial system. See Barger,* 348 F.3d at 1293–94. "For purposes of judicial estoppel, intent is a purposeful contradiction-not simple error or inadvertence." *Id.* at 1294.

*Tedford v. United States,* 2007 WL 1098506, at *2 (M.D.Fla.2007)(Emphasis supplied). "The Eleventh Circuit requires courts to consider two factors when determining whether to apply judicial estoppel: 'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'" *Helson v. Nuvell Financial Services Corp.,* 2006 WL 1804583.

■ In this case, the principles of judicial estoppel should not be invoked.

### A. The parties

As a preliminary matter, the Court makes no determination as to whether any sworn statement by the UST in this case may have the effect of judicially estopping the IRS in a subsequent proceeding. In other words, the Court makes no determination as to whether the UST and the IRS constitute the same party for purposes of applying the doctrine of judicial estoppel.

Every UST is appointed by, and under the direct supervision of, the Attorney General of the United States. 28 U.S.C. § 581, § 586(c). The Attorney General is the head of the Department of Justice. 28 U.S.C. § 503. The Department of Justice is an executive department of the United States. 28 U.S.C. § 501.

Similarly, the IRS "is a bureau of the Department of the Treasury under the immediate direction of the Commissioner of Internal Revenue." 26 C.F.R.

§ 601.101. The Department of the Treasury is also an executive department of the United States government. 5 U.S.C. § 101. The IRS is authorized to administer and enforce the tax laws of the United States. 26 U.S.C. §§ 7801, 7802; *In re Fleming,* 258 B.R. 488, 494 (Bankr. M.D.Fla.2000).

It is clear that the interests of the Department of Justice and the Internal Revenue Service are frequently in alignment. Pursuant to 26 U.S.C. § 7602, for example, the IRS may refer a matter to the Department of Justice for investigation or prosecution of any offense in connection with the administration or enforcement of the internal revenue laws. Additionally, the Department of Justice is designated to conduct any litigation involving the United States or its agencies, including the IRS. 28 U.S.C. § 516.

It appears, therefore, that the UST, as an appointee of the Attorney General, and the IRS are both agencies or bureaus within the United states, and that they may represent common interests in certain circumstances. (But see § 101(27) of the Bankruptcy Code, which provides that the UST is not a "governmental unit" while serving as a trustee in a case.)

The issue in this case, then, is whether the statements of the UST constitute the statements of the IRS in determining whether to apply the doctrine of judicial estoppel.

It is not necessary for the Court to resolve this preliminary issue, however, because the two elements required by the Eleventh Circuit to invoke the doctrine of judicial estoppel are not otherwise satisfied in this case.

### B. Inconsistent statement under oath

First, it is not clear that the UST previously made any specific statement under

oath that is inconsistent with the position taken by the IRS in the current proceeding.

According to the Debtors, the IRS should be estopped from excluding the postpetition taxes from its Claim because the UST previously included in its argument in connection with its Motion to Dismiss "that a Chapter 13 Plan would be feasible if the Debtors paid the 2002 and 2004 tax obligation through the Plan." (Doc. 77).

In the presentation of its Motion to Dismiss, the UST undoubtedly argued that the Debtors should be able to fund a hypothetical Chapter 13 Plan, given their combined monthly income. (See Doc. 20, UST's Trial Memorandum).

At the hearing on the Motion to Dismiss, the UST's position on the Debtors' ability to fund a Plan was presented primarily through the testimony of William Orr, a senior bankruptcy analyst with the UST's office. (Doc. 35, pp. 104–32). Essentially, Mr. Orr reviewed a proposed budget, called an "income analysis," that had been prepared by the UST's office based on the Debtors' disclosed earnings and adjusted expenses. After considering the line items on the budget, Mr. Orr concluded that the Debtors' monthly disposable income totaled $1,236.00, which should be available to fund a hypothetical Chapter 13 Plan. (Doc. 35, p. 115).

Mr. Orr's testimony included his explanation of the proposed treatment in the budget for the Debtors' income tax liability. Mr. Orr testified, for example, that the UST had originally estimated the Debtors' total tax debt to be approximately $50,000.00. He also testified that the UST had factored in a prospective liability that might result if the Debtors stopped making payments on a 401(k) loan. (Doc. 35, pp. 110, 114, 122).

According to the Debtors, it is the liability arising from the 401(k) loan that constitutes the postpetition liability currently at issue. (Transcript, p. 15). Since the UST included the liability in its budget, the Debtors contend that the UST had contemplated payment of the postpetition tax obligation through the Plan when it presented the budget to the Court. Because the IRS is now taking the position that payment of the debt under the Plan is not acceptable, the Debtors assert that they were misled by the UST into pursuing this Chapter 13 case.

The Court finds that the UST's presentation in connection with the budget is not a prior inconsistent statement under oath within the meaning of the doctrine of judicial estoppel.

The alleged inconsistent statements were made in the context of a Motion to Dismiss the Debtors' Chapter 7 case. The primary basis for the Motion was the UST's contention that the Debtors would be able to pay a substantial portion of their debts under a Chapter 13 plan. In the course of the proceedings, the UST presented an "income analysis" that it had prepared based on the Debtors' earnings and expenses. The "income analysis" was basically a sample budget that included the UST's view of the payments that the Debtors should be able to make in a hypothetical Chapter 13 case.

The purpose of the budget was to show that funds would be available for unsecured creditors under a Chapter 13 Plan. The budget was not presented as a definitive statement of the Claims that would be allowed and paid in the hypothetical Chapter 13 case. Clearly, the UST could not formulate a Chapter 13 plan on the Debtors' behalf.

In fact, in the Order on the Motion to Dismiss, the Court found only that the "Debtors have the ability to repay a sub-

562

stantial portion of their debts through a hypothetical Chapter 13 plan." (Doc. 38, p. 11). The Court, of course, made no determination as to any specific terms that might be included in the hypothetical plan.

Under these circumstances, the doctrine of judicial estoppel should not be applied to the presentation made by the UST at the hearing on its Motion to Dismiss. The UST's position regarding the proposed budget was not clearly inconsistent with the IRS's decision not to include the postpetition liability in its Proof of Claim.

### C. Calculated to make a mockery—deliberate or intentional manipulation

■■■ Additionally, the Court finds that judicial estoppel is not appropriate in this case because any inconsistencies between the UST's position and the IRS's position were not "calculated to make a mockery of the judicial system." *Tedford v. United States,* 2007 WL 1098506, at *2 (citing *Barger v. City of Cartersville, Georgia,* 348 F.3d 1289, 1293–94 (11th Cir. 2003)).

> The second factor in judicial estoppel analysis requires this Court to assess whether Plaintiff, in her assertion of inconsistent positions, intended to undermine the integrity of the judicial system. Judicial estoppel does not apply in cases where the inconsistent positions were taken as a result of inadvertence or mistake rather than out of an effort to mislead, or make a mockery of, the court. (Citations omitted.) The Eleventh Circuit has held that, "deliberate or intentional manipulation can be inferred from the record," . . . .

*Helson v. Nuvell Financial Services Corp.,* 2006 WL 1804583, at *3 (M.D.Fla.2006).

In this case, the UST successfully pursued its Motion to Dismiss on the theory that the Debtors had the ability to pay a substantial portion of their debt in a Chapter 13 case. The Motion was appropriate given the Debtors' financial circumstances, and the UST was the proper party to assert the Motion under § 707 of the Bankruptcy Code.

By the time of the final hearing on the Motion to Dismiss, the IRS had already filed its Claim Number 2 based on the Debtors' 2002 income tax liability. The Claim was filed on November 5, 2004. The final hearing on the Motion to Dismiss was conducted on two separate days in 2005.

Subsequent to the conversion of the case, the IRS made the decision not to amend the Claim or file another claim seeking payment of the Debtors' 2004 tax liability through the Chapter 13 Plan. In reaching this decision, the IRS asserts that it considered the fact that interest and penalties would not be paid on the debt in the Chapter 13 case. This fact, combined with the amount of the underlying obligation and the relative recentness of the debt, caused the IRS to opt for collection outside of the Debtors' bankruptcy case. (Transcript, pp. 13–14). *See In re Parffrey,* 264 B.R. at 414("The IRS might elect not to file a claim for postpetition taxes because it might consider that it is in the best interests of the United States to decline to file a claim." The election may be based on the IRS's inability to demand interest under the Chapter 13 plan.)

The Debtors have not suggested, and there is no indication in the record, that the UST and the IRS communicated with each other at any time regarding the treatment of the postpetition tax claim. There is simply no evidence that the IRS's refusal to include the postpetition liability in its Claim is the result of a deliberate scheme to frustrate the Court's administration of the bankruptcy laws.

Rather, it appears that the UST and the IRS independently evaluated the legal claims of their constituencies, and maintained their positions in this case based on those independent evaluations. The Court cannot find that they were "playing fast and loose with the courts to suit the exigencies of self interest." *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d at 1285.

The respective positions of the UST and the IRS were not calculated to make a mockery of the judicial system.

### Conclusion

The matter before the Court is the Debtors' Objection to Proof of Claim of Internal Revenue Service. In the Objection, the Debtors request that the Court amend the IRS's Claim to add their income tax liability for the 2004 tax year.

The Objection to Claim should be overruled. First, the 2004 tax debt is a postpetition liability. Pursuant to § 1305(a) of the Bankruptcy Code, the IRS cannot be compelled to include the postpetition obligation in its Claim.

Additionally, the doctrine of judicial estoppel does not prevent the IRS from excluding the postpetition liability from its Claim. The Court makes no determination as to whether the UST and the IRS are the same parties for purposes of applying the doctrine. Such a determination is not necessary, since the elements of judicial estoppel are not otherwise present in this case. Specifically, the UST and the IRS did not make inconsistent statements under oath, and the separate positions taken by the UST and the IRS were not calculated to make a mockery of the judicial system,

Accordingly:

**IT IS ORDERED** that the Objection to Proof of Claim of Internal Revenue Service (Claim No. 2), filed by the Debtors, William M. Jones and Janet A. Jones, is overruled.